ALASKA CONSTRUCTION & EN-
GINEERING, INC., Appel-
lant/Cross–Appellee,

v.

BALZER PACIFIC EQUIPMENT
COMPANY, Appellee/Cross–
Appellant.

Nos. S–11168, S–11225.

Supreme Court of Alaska.

Jan. 27, 2006.

Rehearing Denied April 4, 2006.

Thomas S. Gingras and Erin K. Egan, Eide, Miller & Pate, P.C., Anchorage, for Appellant/Cross–Appellee.

David W. Pease, Burr, Pease & Kurtz, Anchorage, for Appellee/Cross–Appellant.

Before: BRYNER, Chief Justice, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Alaska Construction & Engineering, Inc. (ACE) leased various pieces of equipment from Balzer Pacific Equipment Company (Balzer). When ACE stopped making rental payments, Balzer sued for breach of contract and sought prejudgment delivery of the equipment. Balzer was allowed to retrieve its equipment after putting up a bond. The jury returned a verdict for Balzer on its breach of contract claims, rejected ACE's affirmative defenses, and awarded ACE $10,000 on one of its counterclaims. Post-trial, the superior court ruled that: (1) Balzer was the prevailing party; (2) the attorney's fees provisions in the lease did not apply to Balzer's attorney's fees at trial; and (3) Balzer was entitled to prejudgment interest at the statutory rate of three and three-quarters percent, as opposed to the eighteen percent rate listed on Balzer's invoices to ACE. ACE appeals the prevailing party decision; Balzer appeals the decisions regarding the attorney's fees provisions and the prejudgment interest rate.

Because ACE won on relatively minor claims while Balzer won on its main claim, we affirm the superior court's designation of Balzer as the prevailing party. Because the lease and the option to purchase are separate agreements, we hold that the attorney's fees provisions in the option to purchase and the repossession section of the lease are inapplicable to this case. Because Balzer did not offer sufficient record evidence regarding the invoice interest rate, we reject the argument that ACE agreed to pay eighteen percent prejudgment interest. Thus, we affirm the superior court in all respects.

## II. FACTS AND PROCEEDINGS

ACE, an Alaska corporation, contracted with Balzer, an Oregon corporation, to lease various pieces of rock crushing equipment with the option to purchase. Two agreements were involved: a December 15, 2000 agreement for conveyers and accessories at $8,980 per month, and a January 11, 2001 agreement for a screen plant at $7,000 per month. The agreements, which were drafted by Balzer, are identical except as to the items leased and their value.

By July 2001 ACE had defaulted on its rental payments. Balzer sued for back rent in Oregon in August 2001. In November 2001 Balzer filed a complaint for breach of contract against ACE in Alaska. Balzer claimed that ACE breached the contract by ceasing to make monthly rental payments and failing to return the equipment. The complaint prayed for the return of the equipment, attorney's fees, and other relief appropriate under the circumstances. Balzer also moved for prejudgment delivery of the equipment pursuant to Alaska Civil Rule 88, and submitted a bond for $228,000, representing the combined contract price of the leased equipment. ACE answered the complaint and opposed the motion for prejudgment delivery. ACE offered various affirmative defenses (including that Balzer materially breached by providing defective equipment), and counterclaimed for unfair trade practices, breaches of contract and the duty of good faith and fair dealing, and intentional and negligent misrepresentation. ACE sought damages of just over $1 million.

A hearing on prejudgment delivery was held on December 11, 2001. ACE opposed the motion on the grounds that it had an ownership interest in the equipment stemming from the rent it had already paid. ACE also argued that Balzer's bond of $228,000 was insufficient under AS 09.40.270,[1] which governs undertakings. At the hearing, the superior court ordered Balzer to post a bond of $489,560, about twice the value of the equipment as set out in the lease agreements. ACE then agreed to turn over the equipment to Balzer. In January 2002 Balzer picked up the equipment at ACE's Anchorage storage yard and eventually transported it to Oregon.

A jury trial was held in February 2003 before Superior Court Judge Philip R. Volland. At trial Balzer sought $20,000 in transportation costs for returning the equipment to Oregon, $52,000 in repair costs, and $40,000 in back rent for ACE's alleged running of a "second shift" in violation of the contracts.[2] In its counterclaim, ACE alleged that it incurred losses from defects in the equipment and loss of profits resulting from those defects; it sought damages totaling $359,000.[3] The jury found that ACE breached the contract and violated the implied covenant of good faith and fair dealing. Therefore, it awarded Balzer approximately $50,500 in damages. The jury rejected all of ACE's affirmative defenses. It also rejected three of ACE's counterclaims: that Balzer had breached the contract, contravened the implied covenant of good faith and fair dealing, and made intentional misrepresentations. The jury found that Balzer had made negligent misrepresentations and awarded ACE approximately $10,000 in damages.

Following the verdict, Judge Volland considered whether to award attorney's fees. The court made three rulings regarding attorney's fees. First, Judge Volland held that Balzer was the prevailing party for the purposes of Alaska Civil Rules 82 and 79. He

---

1. Alaska Statute 09.40.270 states in relevant part:

   A peace officer may not take personal property into custody until the plaintiff delivers to the peace officer the affidavit and undertaking of sufficient sureties to the effect that they are bound in double the value of the property for the prosecution of the action and the return of the property to the defendant, if return be adjudged, and for the payment to the defendant of any sum that may be recovered against the plaintiff.

2. The lease agreements required ACE to pay Balzer an additional $7,990 per month if it ran the leased equipment more than eighty hours per week. The second shift was the alleged additional use, and Balzer argued that ACE had run a second shift for five months.

3. ACE's original complaint requested over $1 million in damages. However, ACE dropped its treble damages claim over the course of litigation and claimed $359,000 in damages at closing arguments.

also held that, although Balzer was entitled to full attorney's fees for the period before it recovered its equipment on January 10, 2002, none of the lease agreement's attorney's fees provisions applied to fees incurred at trial. Finally, Judge Volland rejected Balzer's argument that prejudgment interest be calculated at eighteen percent, as provided in invoices Balzer sent to ACE, and instead applied the statutory rate of three and three-quarters percent.

This appeal concerns only Judge Volland's post-trial attorney's fees decisions. ACE appeals the superior court's designation of Balzer as the prevailing party. Balzer cross-appeals, seeking full attorney's fees and calculation of prejudgment interest at eighteen percent.

## III. STANDARD OF REVIEW

■ We review a trial court's decision regarding prevailing party status as well as the award of costs and attorney's fees for abuse of discretion.[4] An abuse of discretion exists when an award is arbitrary, capricious, manifestly unreasonable, or improperly motivated.[5]

■ "Interpretation of a contract is a question of law to which we apply our independent judgment."[6] We also apply our independent judgment in interpreting the Alaska Civil Rules.[7] In exercising our independent judgment we adopt the rule of law most persuasive in light of precedent, reason, and policy.[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion in Ruling that Balzer Was the Prevailing Party.

■ ACE makes two challenges to the superior court's ruling that Balzer was the prevailing party for the purpose of awarding

attorney's fees. First, ACE argues that both it and Balzer were prevailing parties, and that the superior court erred by not awarding attorney's fees to both parties under Alaska Civil Rule 82 and costs under Alaska Civil Rule 79. Second, ACE contends in the alternative that neither party was entitled to attorney's fees and costs.

■ Alaska Civil Rule 82(a) provides that the "prevailing party in a civil case shall be awarded attorney's fees calculated under this rule." Similarly, Alaska Civil Rule 79(a) states that "the prevailing party is entitled to recover costs" allowable under Civil Rule 79(f). We have previously held that "a party does not have to prevail on all the issues in the case to be a prevailing party" for purposes of attorney's fees and costs.[9] But the "party must be successful with regard to the main issues in the action," though it "need not prevail on every subsidiary issue."[10]

The superior court held that Balzer was the prevailing party because Balzer prevailed on the main issue in the case, which the court defined as "recovery of money owed from [Balzer's] lease contracts with Alaska Construction and Engineering." The superior court correctly observed that the jury had rejected all of ACE's defenses and all but one of ACE's counterclaims, and that the amount awarded to ACE was "nominal."

■ ACE argues that since "both of the parties prevailed on some significant claims and were awarded damages ... both parties should be considered to be prevailing parties." Even if ACE is correct that it prevailed on "some significant claims," we are not persuaded that the superior court abused its discretion by finding that Balzer was the only prevailing party. "Determination of who the prevailing party is does not automatically follow if the party receives an affirmative recovery, but rather is grounded on

4. *Fernandes v. Portwine*, 56 P.3d 1, 4–5 (Alaska 2002).

5. *Id.* at 5.

6. *Peterson v. Ek*, 93 P.3d 458, 463 (Alaska 2004).

7. *Airoulofski v. State*, 922 P.2d 889, 892 (Alaska 1996).

8. *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004).

9. *Hickel v. Southeast Conference*, 868 P.2d 919, 925 n. 7 (Alaska 1994) (internal citation omitted).

10. *Id.*

which party prevails on the main issues."[11] We have held that "a litigant who successfully defeats a claim of great potential liability may be the prevailing party even if the other side receives an affirmative recovery."[12] Here, it was Balzer, and not ACE, that escaped significant liability—ACE requested $359,000 in damages but Balzer was only found liable for $10,000. But it was also Balzer that had the larger monetary award, succeeding on significant portions of its own claims, including its breach of contract claims, and securing a judgment nearly identical to what it sought. In contrast, ACE received only a partial award and succeeded on its least significant claim. In light of the jury's findings that ACE had breached the contract and violated the implied covenant of good faith and fair dealing, and the jury's rejections of all but ACE's least significant claim, we do not find the superior court abused its discretion in concluding that Balzer prevailed on the main issue of the case and that it was entitled to costs and attorney's fees.[13]

### B. The Attorney's Fee Provision in the Option To Purchase Is Inapplicable.

■ Balzer argues that it is entitled to its actual attorney's fees for all legal costs and fees incurred to obtain repossession of the equipment because both contracts contain a separately executed, identical attorney's fees provision that required ACE to pay Balzer's reasonable attorney's fees if ACE defaulted on any of its contractual obligations. ACE responds that the attorney's fees provision is inapplicable to this case because the parties intended for the fees provision to apply only if ACE exercised its option to purchase the leased equipment, and ACE never exercised its option. The relevant paragraphs of the option to purchase provide:

> At any time during the term of this lease, provided Lessee has made all payments when due and is not otherwise in default in this or any other agreement with Lessor, Lessee may purchase the equipment described in the lease contract by paying cash to Lessor the amount of [the value of the equipment] less 100% of rentals paid if purchased within 90 days, or less 90% of the rentals paid if purchased after 90 days. Time is of the essence of this contract. If Lessee fails to make all payments when due or defaults on any obligation, term of notice, Lessor shall there upon be entitled to immediate possession of all equipment, and in the event of the commencement of any suit or action involving this contract or the disbursements provided by law, Lessor's reasonable costs in recovering said equipment and such additional sum as the court may adjudge reasonable as attorney's fees in such suit or action or upon any appeal there from.

Balzer maintains that because the option to purchase allowed ACE to apply past rent payments towards the purchase of the equipment, the attorney's fees provision was triggered not by failure to make payments on the purchased equipment, but by failure to make lease payments that could be credited towards a later purchase.

---

**11.** *Cont'l Ins. Co. v. U.S. Fid. & Guar. Co.*, 552 P.2d 1122, 1125 (Alaska 1976).

**12.** *Buoy v. ERA Helicopters, Inc.*, 771 P.2d 439, 448 (Alaska 1989).

**13.** ACE also cites *Andrus v. Lena*, 975 P.2d 54 (Alaska 1999), for the proposition that a party may prevail even though it did not secure all of the relief sought, and *Blumenshine v. Baptiste*, 869 P.2d 470 (Alaska 1994), for the idea that a party should not be penalized for a small recovery. In *Andrus* we held that the plaintiff was the prevailing party because it won on its key claims even though it lost on some claims; the size of the monetary award was less important than the fact that plaintiff succeeded on the claims central to its suit. *Andrus*, 975 P.2d at 58. *Andrus* does not help ACE because ACE lost on the breach of contract and intentional misrepresentation claims that would have shielded it from liability and allowed it to collect significant damages. Neither does *Blumenshine* support ACE's argument. In that case we awarded prevailing party status to the plaintiff in an automobile accident case, notwithstanding his recovery of past medical expenses, and only about $16,000 for past and future physical impairment and pain and suffering although he claimed $700,000. *Blumenshine*, 869 P.2d at 474. We held that the total award, while small in relation to what was claimed, still constituted "a significant damage award on the main issues." *Id.* at 474. This characterization supports the award of prevailing party status to Balzer even though it did not win on its second-shift claims, but is inapplicable to ACE given its failure to win on its affirmative defenses or its primary counterclaims.

When interpreting a contract, we strive to give effect and reasonable meaning to all provisions of the instrument,[14] and we interpret contract terms so as to avoid interpretations that cause conflicts among the provisions.[15]

In light of these principles, we reject Balzer's interpretation. Some factors, including the fact that the lease and option to purchase were signed contemporaneously and the fact that the lease and the option to purchase are paginated as a single document, support Balzer's interpretation that attorney's fees provisions contained in the option to purchase applied in case of any failure to make lease payments. However, other factors, such as the placement of the lease and the option to purchase under separate subheadings, the fact that each section is signed separately, and the fact that Balzer's interpretation would render redundant paragraph 9(c) of the lease, which allows for attorney's fees and costs associated with repossession of the equipment, lead us to read the lease and the option to purchase as separate agreements. Thus, the attorney's fee provision in the option to purchase only applies to fees associated with securing payment for purchased items.

### C. The Lease Agreement Does Not Entitle Balzer to Full Attorney's Fees and Costs for Its Efforts After January 10, 2002.

Following trial, Balzer moved for full attorney's fees and costs based on the lease contracts. According to the attorney's fees provision in the section of the contract dealing with repossession, ACE was bound:

(9) To return the equipment at the end of the rental. If Lessee has not, at its own expense, loaded and returned the equipment at the Lessor's written demand to do so, the Lessee further covenants and agrees:

. . . .

(c) That Lessee will pay Lessor for all costs, including attorney's fees, if any, and Sheriff's costs and fees, and all other expenses incurred by Lessor in effectuating repossession.

The superior court agreed that Balzer was contractually entitled to full attorney's fees and costs it incurred in effectuating repossession. Citing *Brown v. Baker*,[16] however, the court observed that repossession is complete when a party resumes possession of its property. The court then determined that Balzer had effectuated repossession when it obtained possession of the equipment on January 10, 2002 and was only entitled to full fees and costs through that date. The court specifically rejected Balzer's argument that, since it was required to post a bond in order to obtain prejudgment delivery of the equipment, repossession was not completed until the bond was returned after trial. The superior court analyzed Balzer's arguments by looking to AS 09.40.270, which specifies the requirements for undertakings:

A peace officer may not take personal property into custody until the plaintiff delivers to the peace officer the affidavit and undertaking of sufficient sureties to the effect that they are bound in double the value of the property for the prosecution of the action and the return of the property to the defendant, if return be adjudged, *and for the payment to the defendant of any sum that may be recovered against the plaintiff.*

(Emphasis added.)

Referring to the emphasized portion of the statute, the superior court stated that at the prejudgment delivery hearing "ACE agreed to release the property once Balzer posted a bond for twice the amount of the value of the equipment, and that therefore the bond did not substitute for the property. Rather, the bond acted to secure payment to ACE on its counterclaims against Balzer." The court also rejected Balzer's argument that prejudgment delivery in this case had not re-

---

**14.** *Modern Constr., Inc. v. Barce, Inc.*, 556 P.2d 528, 530 (Alaska 1976) (quoting 4 SAMUEL WILLISTON & WALTER JAEGER, WILLISTON ON CONTRACTS § 619, at 731 (3d ed.1961)).

**15.** *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1049 n. 23 (Alaska 1977) (quoting *McBain v. Pratt*, 514 P.2d 823, 828 (Alaska 1973)).

**16.** 688 P.2d 943, 950 (Alaska 1984).

solved the issue of possession, noting that neither party disputed possession at trial and that the jury was not asked to decide which party was entitled to possession.

On appeal, Balzer argues that because Alaska Civil Rule 88 [17] is a prejudgment remedy and because the bond stood in the place of the equipment, it did not complete repossession until it received a judgment at trial. Balzer notes that according to Rule 88(*l*) the order for seizure lapses if a judgment is not obtained within six months, and argues that therefore it did not repossess the equipment until it received a final judgment. Balzer also maintains that the trial falls under the repossession section's attorney's fee provision because Balzer had to proceed through trial to get transport costs stemming from the repossession.

ACE responds that Balzer "effectuated repossession" under the lease agreement when it reclaimed the equipment from ACE since physical possession of the equipment was all that was required. ACE further argues that Balzer's interpretation of Alaska Civil Rule 88 is only correct where possession is in dispute, but that in this case, because ACE voluntarily turned over the equipment in exchange for a bond that secured its counterclaims, no one contested possession of the equipment. Thus, ACE argues that Balzer effectuated repossession of the equipment when it took physical possession of it. ACE also adopts the superior court's position regarding Balzer's bond, arguing that ACE voluntarily relinquished its claims to the equipment once Balzer retook possession,

and only sought the bond to guarantee its counterclaims against Balzer.

We agree with the superior court's analysis. As noted previously, ACE in its opposition to Balzer's motion for prejudgment delivery initially claimed a "compensable property interest" in the equipment. However, after Balzer posted the replevin bond and retook possession in January 2002, ACE waived any ownership claims to the equipment. Although Balzer correctly observes that a Civil Rule 88 bond stands in the place of personal property, Balzer's further assertion that repossession cannot be completed or "effectuated" until a Rule 88 bond has been returned is undermined by the facts of this case. The superior court did not issue, nor did Balzer request, a Civil Rule 88(e) seizure order.[18] After Balzer repossessed the equipment in January 2002, there was no question of returning it to ACE, nor did ACE persist in asserting that its previous lease payments created an ownership interest under the option to purchase agreement. Balzer filed its first amended complaint in March 2002. In its answer and counterclaims, filed in April 2002, ACE omitted any claim to the equipment, and claimed only damages for unfair trade practices, breach of contract and of the duty of good faith and fair dealing, negligent and intentional misrepresentation, and fraud.

The replevin bond has two purposes. It guarantees both the "return of the property to the defendant, if return be adjudged, and . . . the payment to the defendant of any sum

---

**17.** Alaska Civil Rule 88 states in relevant part:

(a) Prejudgment Delivery of Personal Property to Plaintiff; Availability. When the plaintiff has commenced a civil action to recover possession of personal property, the plaintiff may make application to the court to have the property delivered to the plaintiff. The court may order the prejudgment seizure of the property in accordance with the provisions of this rule.

. . . .

(*l*) Duration and Vacation of Prejudgment Seizure Orders Issued Pursuant to Hearing. A prejudgment seizure order issued pursuant to a hearing provided for in section (c) of this rule shall unless sooner released or discharged, cease to be of any force or effect and the property seized shall be released from the operation of the order at the expiration of six (6)

months from the date of the issuance of the order, unless a notice of readiness for trial is filed or a judgment is entered against the defendant in the action in which the order was issued, in which case the order shall continue in effect until released or vacated after judgment as provided in these rules.

**18.** Alaska Civil Rule 88(e) provides:

If at the hearing the court finds that the plaintiff has met the burden of proof as set forth in paragraph (d) of this rule, the court shall issue an order prescribing the written undertaking, with sufficient sureties, to be provided by the plaintiff and directing a peace officer to seize and take into custody the property described in the affidavit upon the furnishing of the undertaking by the plaintiff.

that may be recovered against." [19]   In this case, the bond served only the second of its two purposes (guarantee of payment to the defendant), since the parties agreed on ownership of the equipment before trial and Judge Volland did not instruct the jury to decide this issue.

Balzer is incorrect in stating that repossession requires final judgment simply because the possessory rights are premised on continued pursuit of the replevin action.   Balzer offers several cases for the proposition that replevin actions are temporary in nature and that possession is final only after a final judgment is rendered.[20]   Balzer relies primarily on *Eastman Kodak Co. v. Thomas Gordon and Associates, Inc.* for this proposition.[21]   In that case, Eastman Kodak secured return of its equipment through a prejudgment bond, but both parties then let their claims and counterclaims languish for eight years, and the suit was dismissed for lack of prosecution.   The court held that Thomas Gordon was the prevailing party because replevin plaintiffs are under an obligation to pursue their claims.[22]   Balzer maintains that *Eastman Kodak* supports its position that repossession requires a final judgment because its possessory rights were similarly temporary.   But *Eastman Kodak* is distinguishable from the present case.   While in both cases there was no final judgment on the propriety of the prejudgment seizure, in *Eastman Kodak* this was because the parties allowed the case to languish.   By contrast, in the present case, Balzer and ACE agreed during the replevin hearing that Balzer would take possession of the equipment, following which the parties actively litigated the issues remaining between them.   Nor did Balzer offer any evidence that the delayed payments and the costs of securing the bond undermined Balzer's use of the equipment.

Balzer was able to make repairs, sell some of the equipment, and prepare the rest for re-rental.   Similarly, there is no evidence that the costs of securing the bond and delayed payments undermined Balzer's ability to use the equipment.   And as the prevailing party, Balzer can pass costs associated with the bond to ACE, while any delays in payment due to the trial are offset by the award of prejudgment interest.   Thus, Balzer did not suffer any detriment that prevented it from exercising control over the property sufficient to have effected repossession.

Balzer also argues that "transportation costs are a part of the repossession" and that "[it] did not effectuate repossession until it recovered its transportation costs at the trial," which required that it defeat ACE's counterclaims.   Put differently, Balzer asserts that because it did not receive the transport costs ACE was obligated to pay until Balzer received a final judgment at trial, the attorney's fees associated with securing those transport costs are covered by the repossession section's attorney's fees provision.   We reject this argument because it fails to distinguish between Balzer's attorney's fees associated with securing its transport costs and those fees associated with defending against ACE's counterclaims or those related to securing its repair costs.   In this combined action, sizeable portions of Balzer's trial attorney's fees were clearly associated with non-transport costs.   Balzer successfully defended against ACE's numerous counterclaims, and the repair damages amounted to $30,000 of Balzer's $50,500 judgment.   In light of this commingling of issues and effort, we reject Balzer's argument that it can collect full attorney's fees for trial services under the repossession section fee provision simply because it needed to proceed through trial to secure transport costs.

**19.**   AS 09.40.270.

**20.**   *E.g., Burroughs v. U.S. Fid. & Guar.*, 74 N.M. 618, 397 P.2d 10 (1964) *overruled by Quintana v. Knowles*, 113 N.M. 382, 827 P.2d 97 (1992) (describing trial court proceedings where plaintiff who recovered possession of tractor and trailer after posting replevin bond, then litigated ownership at trial was thus adjudged to be owner of tractor and trailer and entitled to possession); *America Rents v. Crawley*, 77 Ohio App.3d 801, 603 N.E.2d 1079 (1991) (after default judgment in creditor's favor, creditor sought to repossess consumer goods from debtor who defaulted on promissory note, but trial court merely confirmed creditor's ownership and awarded money damages to creditor since replevin is prejudgment rather than postjudgment remedy).

**21.**   789 So.2d 360, 361–62 (Fla.Dist.App.2001).

**22.**   *Id.* at 364.

To adopt the broad interpretation suggested by Balzer would allow it attorney's fees for claims and defenses not covered by the repossession section's attorney's fees provision. Consequently, we reject the argument that Balzer is entitled to full attorney's fees because it had to proceed through trial to secure its transport costs.[23]

### D. The Superior Court Properly Calculated Prejudgment Interest at the Statutory Rate.

■ Balzer also cross-appeals the superior court's application of AS 09.30.070's three and three-quarters percent prejudgment interest rate. The lease contract specifies that ACE must either make repairs to the leased equipment or pay Balzer for any repairs according to the prevailing price for such work. The relevant provision states:

> Lessee further covenants and agrees as follows:
>
> . . . .
>
> (10) To make all necessary repairs if the equipment becomes damaged in operation or in transit at Lessee's own expense and cost, and to hold Lessor harmless for any loss, costs or expenses on account of or arising from repairs or maintenance or claims therefore, or failing to do so, Lessee authorized Lessor to make such repairs for maintenance and agrees to pay the same at the prevailing price for such work.

A statement that eighteen percent interest is charged on outstanding balances is printed on the repair invoice Balzer sent ACE soon after Balzer repossessed the equipment. Balzer asserts that the lease incorporates these invoices. The lease provides:

> Lessee agrees to pay on invoice apportioned charges for tire wear, manganese wear, wear plate or liner wear, conveyor belting, screen cloths, and any apportioned wear costs, lessor will be the sole judge of amount of wear charges.

Thus, Balzer argues that ACE agreed to accept invoices bearing the "prevailing price" for repairs, and that the interest rate is part of this prevailing price. As Balzer sees it, ACE accepted the eighteen percent interest rate (or should be deemed to have done so) in the course of its contractually authorized dealings with Balzer.

Alaska Statute 45.12.207(a) governs interpretations of leases. That statute provides:

> If a lease contract involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is relevant to determine the meaning of the lease agreement.

However, AS 45.12.207(a) does not apply to this case, because Balzer did not introduce record evidence that ACE had knowledge of the eighteen percent provision or a reasonable opportunity to reject it before both parties ceased all performance of the contract.[24]

Balzer cites only invoices for repairs which it sent to ACE after Balzer took possession of the equipment, by which time ACE had long ceased payments. Additionally, insofar as ACE had an opportunity to object to the eighteen percent provision after Balzer brought suit, we agree with ACE that in litigating Balzer's claim for repairs, ACE

---

**23.** As Balzer is entitled to fees associated with securing its transport costs, it arguably could have requested apportionment of its attorney's fees, gaining full fees for transport-cost related efforts and normal Civil Rule 82 fees for its defense against ACE's counterclaims and its securing of repair costs. However, since Balzer did not request apportionment in the superior court, we need not reach this argument.

**24.** *Compare A & G Constr. Co., Inc. v. Reid Bros. Logging Co., Inc.,* 547 P.2d 1207 (Alaska 1976). In that case, a materials supplier and a highway construction contractor entered a contract for the sale of highway construction materials. The supplier sent a letter to the contractor notifying

the contractor that it would increase the price of the materials. Because the contractor continued to receive and accept the materials thereafter without objecting in writing to the price increase (as required for sales contracts of $500 or more, under AS 45.02.201, formerly numbered 45.05.020), the contractor was obligated to pay the increased rate for materials received after notice of the increased price. *Id.* at 1215–17. According to AS 45.02.201(c), "[a] contract which does not satisfy [the writing requirement] but which is valid in other respects is enforceable . . . (3) with respect to goods . . . which have been received *and accepted.*" (Emphasis added.)

objected to the repair invoices as a whole. Additionally, in its order on attorney's fees, the superior court found that the parties' contract "contained no provisions for enhanced interest." After re-examining this matter on Balzer's motion, the superior court again reached the same conclusion in its order on correction of the judgment. Our own search of the record reveals no earlier invoices. Further, at oral argument Balzer's counsel was unable to point to any invoice that included the eighteen percent rate before Balzer repossessed the equipment. We are unable to conclude on the facts presented that ACE acquiesced to the eighteen percent provision. Therefore, we hold that the statutory three and three-quarters percent interest rate for prejudgment interest is appropriate in this case.

## V. CONCLUSION

Because Balzer succeeded on the primary issues at trial, the superior court did not abuse its discretion in deeming Balzer to be the prevailing party and awarding it attorney's fees and costs under Alaska Civil Rules 82 and 79.

Because the lease and the option are separate agreements, we reject Balzer's argument that the attorney's fees provision of the option to purchase is applicable to this case.

Further, because the parties did not dispute ownership after Balzer repossessed the equipment, Balzer cannot collect its trial costs under the repossession section of the lease. While Balzer did have to undergo trial after repossession to secure repossession-related transport costs, it cannot recover attorney's fees for that effort because its trial costs include fees for claims and defenses not incurred while securing the transport costs. Awarding it full fees would overcompensate Balzer.

Because ACE did not agree to the eighteen percent interest rate listed on Balzer's repair invoices, the superior court correctly set prejudgment interest at the statutory rate.

In sum, we AFFIRM the decision of the superior court in all respects.

MATTHEWS, Justice, not participating.